THE ESTATE OF JOHN WATERS, SWANNIE TAYLOR WATERS, ADMINISTRATRIX, PLAINTIFF v. WAYNE THOMAS JARMAN; JOHN BERRY; KINSTON SURGICAL ASSOCIATES, P.A.; ROBERT WILLIAM BYNUM; EASTERN NEPHROLOGY ASSOCIATES, PLLC; LENOIR MEMORIAL HOSPITAL, INC. D/B/A LENOIR MEMORIAL HOSPITAL, DEFENDANTS

No. COA00-510

(Filed 5 June 2001)

### Hospitals and Other Medical Facilities— negligence—granting of privileges—Rule 9(j) certification

The trial court erred in a medical malpractice action by dismissing claims against defendant hospital for negligently granting hospital privileges because those claims lacked the certification required by N.C.G.S. § 1A-1, Rule 9(j). Corporate negligence actions brought against a hospital which pertain to clinical patient care constitute medical malpractice actions; however, the claim is derived from ordinary negligence principles where it arises from policy, management or administrative decisions (such as granting or continuing hospital privileges). Only those claims which assert negligence arising from the provision of clinical patient care constitute medical malpractice actions and require certification.

Appeal by plaintiff from order entered on 7 February 2000 by Judge James D. Llewellyn in Lenoir County Superior Court. Heard in the Court of Appeals 15 March 2001.

*Faison & Gillespie, by O. William Faison and John W. Jensen, for plaintiff-appellant.*

*Harris, Shields, Creech and Ward, P.A., by Robert S. Shields, Jr., for defendant-appellees.*

MARTIN, Judge.

This action arises out of medical treatment provided by Drs. Wayne Jarman, Robert Bynum and John Berry to John Waters [hereinafter "decedent"] at Lenoir Memorial Hospital [hereinafter "defendant hospital"] from 8 June 1997 through 20 June 1997. Decedent was transferred to Pitt County Memorial Hospital on 20 June and died on 6 August 1997. The complaint alleges negligence on the part of the three physicians for failing to diagnose appendicitis and asserts claims against Kinston Surgical Associates and Eastern Nephrology

Associates, PLLC, under the theory of respondeat superior. The complaint also asserts claims against defendant hospital under the theories of respondeat superior and corporate negligence. The corporate negligence claims allege that defendant was negligent by failing to adequately assess the physicians' credentials before granting hospital privileges, by continuing the physicians' privileges at the hospital, by failing to monitor and oversee the physicians' performances, and by failing to follow its own procedures.

As required by G.S. § 1A-1, Rule 9(j), the complaint certified that "[t]he medical care in this action was reviewed by persons reasonably expected to qualify as expert witnesses pursuant to Rule 702 of the North Carolina Rules of Evidence" and that those persons "are willing to testify that the medical care did not comply with the applicable standard of care." The complaint then stated:

> This pleading, however, also alleges facts establishing breaches of common law duties for which certification of compliance with Rule 9(j) is not required. In particular, the claims against the Hospital—which do not allege "medical malpractice by a health care provider. . .in failing to comply with the applicable standard of care," but rather, allege respondeat superior and common law corporate negligence—fall outside the requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure and, as such, compliance with Rule 9(j) with respect to these claims is not required.

In its answer, defendant sought dismissal because plaintiff failed to comply with Rule 9(j) as to its claims of corporate negligence. The trial court allowed the motion and dismissed the corporate negligence claim against defendant hospital. The trial court certified its order as a final judgment pursuant to G.S. § 1A-1, Rule 54(b). Plaintiff appeals.

---

The sole issue before this Court is whether Rule 9(j) certification is required when a plaintiff alleges corporate negligence claims against a hospital. G.S. § 1A-1, Rule 9(j) provides, in pertinent part:

> Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2000). Rule 9(j) was enacted in 1995, "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care." *Webb v. Nash Hospitals, Inc.*, 133 N.C. App. 636, 639-40, 516 S.E.2d 191, 194, *disc. review denied*, 351 N.C. 122, 541 S.E.2d 471 (1999).

The applicable standard of care in medical malpractice actions is governed by G.S. § 90-21.12, which was enacted in 1975 and provides:

In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities . . . .

Establishing the standard of care owed by a health care provider in a medical malpractice action generally requires "highly specialized knowledge" not within the common knowledge of a layperson. *Mazza v. Huffaker*, 61 N.C. App. 170, 175, 300 S.E.2d 833, 837, *disc. review denied*, 309 N.C. 192, 305 S.E.2d 734 (1983). Therefore, expert testimony is often required in medical malpractice actions. *Id.* Thus, resolution of this case depends upon whether corporate negligence claims asserted against a hospital constitute medical malpractice actions. If the claims are medical malpractice actions, Rule 9(j) requires certification of expert review in the pleading.

Our statute governing actions for medical malpractice defines "medical malpractice action" as:

a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the

performance of medical, dental, or other health care by a health care provider.

N.C. Gen. Stat. § 90-21.11 (1999). Pursuant to this section, a hospital constitutes a "health care provider." *Id.*

We have previously established that some negligence claims asserted against a health care provider do not fit within the statutory definition of medical malpractice. In *Lewis v. Setty*, 130 N.C. App. 606, 503 S.E.2d 673 (1998), the plaintiff alleged that the physician was negligent in failing to lower the examination table prior to transferring the plaintiff to his wheelchair. The action was dismissed by the trial court for failure to comply with Rule 9(j). *Id.* at 607, 503 S.E.2d at 673. On appeal, we held that compliance with Rule 9(j) was not required because the cause of action did not arise out of the "furnishing of *professional* services" and therefore did not fit the definition of a medical malpractice action. *Id.* at 608, 503 S.E.2d at 674. *See also Taylor v. Vencor*, 136 N.C. App. 528, 525 S.E.2d 201, *disc. review denied*, 351 N.C. 646, 543 S.E.2d 884 (2000) (holding the claim was not a medical malpractice action where the plaintiff sued a nursing home for failure to adequately supervise her elderly mother while she smoked cigarettes).

It is undisputed that the claims asserted in this action involve the furnishing of professional services; however, the pertinent question here appears to be whether the claims arose "*in the performance of medical, dental, or other health care* by a health care provider." N.C. Gen. Stat. § 90-21.11 (emphasis added). A review of the case law involving corporate negligence claims asserted against a hospital reveals that there are fundamentally two kinds of claims: (1) those relating to negligence in clinical care provided by the hospital directly to the patient, and (2) those relating to negligence in the administration or management of the hospital. The case law has treated the two types of claims differently.

Our courts have applied the medical malpractice statutory standard of care and required expert testimony where the corporate negligence claims arose out of clinical care provided by the hospital to the patient. In *Clark v. Perry*, 114 N.C. App. 297, 442 S.E.2d 57 (1994), the plaintiff sued a hospital for failing to obtain informed consent prior to performing a blood transfusion. The court noted that expert testimony is required to establish the standard of care regarding failure to obtain informed consent, and held that plaintiff failed to make out a

*prima facie* case because no evidence was produced about the standard of care utilized by health care facilities in similar communities when obtaining a patient's informed consent to a blood transfusion. *Id.* at 316, 442 S.E.2d at 67-68. In *Tripp v. Pate*, 49 N.C. App. 329, 271 S.E.2d 407 (1980), the plaintiff alleged the hospital was negligent in failing to promptly report test results to her physician. This Court upheld a directed verdict in favor of defendant hospital, holding that the plaintiff failed to offer some evidence that the care of the defendant hospital was not in accordance with the standards of practice among other hospitals in the same or similar communities regarding the time necessary to report test results. *Id.* at 333, 271 S.E.2d at 409-10. Finally, in *Paris v. Kreitz*, 75 N.C. App. 365, 331 S.E.2d 234, *disc. review denied*, 315 N.C. 185, 337 S.E.2d 858 (1985), the plaintiffs sued the hospital for negligence because the emergency room doctor failed to see the patient despite requests from the patient's daughter. This Court held "[t]here is no evidence of a standard by which the Hospital's handling of the case could be judged by a jury." *Id.* at 386, 331 S.E.2d at 248.

However, where the corporate negligence claims allege negligence on the part of the hospital for administrative or management deficiencies, the courts have instead applied the reasonably prudent person standard of care. In *Blanton v. Moses H. Cone Hosp., Inc.*, 319 N.C. 372, 354 S.E.2d 455 (1987), the plaintiff sued the hospital seeking damages for injuries sustained in a series of operations performed on its premises. The allegations against the hospital included that the hospital was negligent in granting privileges to plaintiff's physician to perform an operation for which he was not qualified and in failing to adequately monitor and oversee the physician. *Id.* at 373, 354 S.E.2d at 456. The Court stated that corporate negligence is merely the application of common law principles of negligence, and applied the reasonably prudent person standard to the plaintiff's claims. *Id.* at 375, 354 S.E.2d 457. Similarly, this Court applied the reasonably prudent person standard of care to a corporate negligence claim in *Bost v. Riley*, 44 N.C. App. 638, 262 S.E.2d 391, *disc. review denied*, 300 N.C. 194, 269 S.E.2d 621 (1980), where the plaintiff alleged that the hospital was negligent in its selection and supervision of the physicians who performed the surgery. *See also Muse v. Charter Hospital*, 117 N.C. App. 468, 452 S.E.2d 589, *affirmed*, 342 N.C. 403, 464 S.E.2d 44 (1995) (applying the reasonably prudent person standard where the plaintiff alleged the hospital was negligent in its practice of discharging patients when their insurance expired).

Collectively, we believe these cases stand for the proposition that corporate negligence actions brought against a hospital which pertain to clinical patient care constitute medical malpractice actions; however, where the corporate negligence claim arises out of policy, management or administrative decisions, such as granting or continuing hospital privileges, failing to monitor or oversee performance of the physicians, credentialing, and failing to follow hospital policies, the claim is instead derived from ordinary negligence principles. This distinction is consistent with the statutory definition of medical malpractice actions, which requires that the claim arise of out services "in the performance of medical, dental or other health care." Accordingly, only those claims which assert negligence on the part of the hospital which arise out of the provision of clinical patient care constitute medical malpractice actions and require Rule 9(j) certification.

Finally, we address defendant's argument that the language of Rule 702(h) of the North Carolina Rules of Evidence demonstrates that claims against hospitals pertaining to administrative or nonclinical issues constitute medical malpractice actions. This section provides:

> Notwithstanding subsection (b) of this section, in a medical malpractice action against a hospital or other health care or medical facility, a person may give expert testimony on the appropriate standard of care as to administrative or other nonclinical issues if the person has substantial knowledge, by virtue of his or her training and experience, about the standard of care among hospitals, or health care or medical facilities, of the same type as the hospital, or health care or medical facility, whose actions or inactions are the subject of the testimony situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 8C-1, Rule 702(h). However, Rule 702(h) is a rule of evidence, not one of substantive law. While we recognize that the language of this evidentiary rule may appear inconsistent with our holding in this case, we believe the substantive law is clear that the reasonably prudent person standard, and not the medical malpractice statutory standard of care, applies to corporate negligence actions involving claims related to administrative or nonclinical issues. Because principles of ordinary negligence have been applied to these types of claims even after the enactment of the statutory standard of

care in G.S. § 90-21.12, and because the legislature has not since articulated a change in the standard of care, we do not believe the language of Rule 702(h) applies to require Rule 9(j) certification. While we recognize the danger of artful pleading in these cases and the potential for erosion of the policy behind the enactment of Rule 9(j), this argument is for the legislature.

In the case before us, the claims against defendant hospital assert negligence in the continuation of hospital privileges, failure to follow hospital policies, failure to monitor and oversee the performance of the physicians, and failure to adequately assess the credentials of the physicians prior to granting privileges. Because these claims assert administrative and management deficiencies and do not arise out of the furnishing of professional services in the performance of medical, dental or other health care, they are not claims for medical malpractice. Accordingly, Rule 9(j) certification is not required and the court erred in dismissing these claims.

Reversed.

Judges TIMMONS-GOODSON and TYSON concur.