MARCELLA DEAL, Administrator of the ESTATE OF JERRY NELSON DEAL, and MARCELLA DEAL, individually, Plaintiff,
v.
FRYE REGIONAL MEDICAL CENTER, INC., Defendant.
No. COA09-873.
Court of Appeals of North Carolina.
Filed: February 16, 2010.
This case not for publication
Grant Richman, PLLC, by Robert M. Grant, Jr., for plaintiff-appellant.
Smith Moore Leatherwood LLP, by Alan W. Duncan and Lisa Frye Garrison, for defendant-appellee.
CALABRIA, Judge.
Marcella Deal ("plaintiff"), as administrator of the estate of Jerry Nelson Deal ("decedent"), appeals an order granting Frye Regional Medical Center, Inc.'s ("defendant") motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007) ("Rule 9(j)"). We affirm.

I. BACKGROUND
Taken as true for the purposes of this appeal, plaintiff's complaint tends to show the following: On 24 May 2000, decedent was taken to the defendant's Emergency Department complaining of chest pains and shortness of breath. Decedent was subsequently admitted to defendant's Critical Care Unit with a diagnosis of chest pain, a heart attack, and renal failure. The next day, 25 May, defendant's nursing staff and employees assessed decedent and found him using a wheelchair and needing help walking. On 26 May, the nurses made entries in decedent's medical charts stating that they observed seizure-like activity. In addition, decedent was bedfast and needed assistance with positioning. Decedent was treated with anti-seizure medication, and the nurses noted that his mental status improved.
On 27 May 2000, decedent was transferred to the Telemetry Unit. He was diagnosed with coronary artery disease following a heart catheterization that had been performed on 25 May 2000. Nurses noted in decedent's medical charts that day that he had suffered a seizure, had a catheter for bladder problems, and was bedfast. However, the nurses failed to conduct a Fall Risk Screen Assessment ("FRSA") and failed to implement a fall risk safety policy to protect decedent from falling. At around midnight on 27 May, the nurses noted in decedent's charts that he was being monitored closely because he "tends to try and get out of bed by himself."
On 28 May 2000, the nurses noted that decedent needed assistance with activity, walked with assistance, had an unsteady gait and weakness, and placed decedent's call bell "within reach, bed low position." The next day, plaintiff notified the nursing staff that decedent was hallucinating. On 29 May, decedent fell out of his hospital bed and fractured his right hip. Decedent's injury required surgery and rehabilitation.
On 29 May 2003, plaintiff filed an action against defendant, but the action was voluntarily dismissed on 18 August 2005 pursuant to N.C. Gen. Stat. § 1A-1, Rule 41(a) (2005). Plaintiff refiled her complaint on 17 August 2006. On 12 November 2008, following extensive discovery, defendant filed a motion to dismiss plaintiff's claim for failure to comply with the requirements of Rule 9(j). On 25 January 2009, the trial court entered an order granting defendant's motion. Plaintiff appeals.

II. MOTION TO DISMISS
Plaintiff argues the trial court erred in granting defendant's motion to dismiss for failure to comply with the requirements of Rule 9(j) because plaintiff contends her case was an action for ordinary negligence. We disagree.
A plaintiff's compliance with Rule 9(j) requirements is a question of law for the trial court, and as such it is reviewable de novo on appeal. Phillips v. Triangle Women's Health Clinic, Inc., 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002). Rule 9(j) states:
Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:
(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
(2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.
N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007). According to N.C. Gen. Stat. § 90-21.11, "the term `medical malpractice action' means a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider."[1] When nurses make "medical decision[s] requiring clinical judgment and intellectual skill," they are providing professional services, and therefore the action against them must be certified per Rule 9(j). Sturgill v. Ashe Mem'l Hosp., Inc., 186 N.C. App. 624, 630, 652 S.E.2d 302, 306 (2007), rev. denied, 362 N.C. 180, 658 S.E.2d 662 (2008). Corporate negligence actions brought against hospitals which pertain to clinical patient care sound in medical malpractice, while such actions which arise out of policy, management, or administrative decisions sound in ordinary negligence. Estate of Waters v. Jarman, 144 N.C. App. 98, 103, 547 S.E.2d 142, 145 (2001). Examples of policy, management, or administrative decisions include "granting or continuing hospital privileges, failing to monitor or oversee performance of the physicians, credentialing, and failing to follow hospital policies[.]" Id. "In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that `pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim.'" Sturgill, 186 N.C. App. at 628, 652 S.E.2d at 305 (quoting Anderson v. Assimos, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002)).
Plaintiff cites Sturgill to support her argument that her theory of liability sounds in ordinary negligence based on defendant's failure to implement and follow a fall prevention policy for decedent. We disagree.
In Sturgill, this Court affirmed the trial court's granting of the defendant hospital's motion for summary judgment because the plaintiff failed to have her action certified pursuant to Rule 9(j). 186 N.C. App. at 624, 652 S.E.2d at 303. The plaintiff argued that the defendant's failure to implement its fall prevention policy was an ordinary negligence claim. Id. at 628, 652 S.E.2d at 305. However, the Court stated that the plaintiff's complaint only mentioned the policy in passing and that the plaintiff's claim was based on the hospital's failure to place restraints on the decedent. Id. Further, this Court did not address whether failure to follow a fall prevention policy sounded in ordinary negligence or medical malpractice.
Plaintiff cites Lewis v. Setty, 130 N.C. App. 606, 503 S.E.2d 673 (1998), and Norris v. Hospital, 21 N.C. App. 623, 205 S.E.2d 345 (1974), as support for her argument that "North Carolina has long recognized that when a [health care provider] does not raise bed rails or instruct a patient to ask for assistance in getting out of bed, the patient's action for damages from a fall is for ordinary negligence, not medical malpractice." We disagree.
In Lewis, we held that a physician's removal of a patient from the physician's examination table to a wheelchair "did not involve an occupation involving specialized knowledge or skill, as it was predominately a physical or manual activity." 130 N.C. App. at 608, 503 S.E.2d at 674. Therefore, the plaintiff patient's action against the physician sounded in ordinary negligence, and Rule 9(j) certification was not required. Id. at 608-09, 503 S.E.2d at 674. Norris was decided before our legislature adopted Rule 9(j) in 1995. In Norris, the defendant's nurses failed to raise the plaintiff's bed rails as required by a hospital bulletin. 21 N.C. App. at 625-26, 205 S.E.2d 347-48. We held that the defendant's actions "did not involve the rendering or failure to render professional nursing or medical services requiring special skills" because nurses were mandated to raise the bed rails for patients like the plaintiff who were more than 60 years old and who were sedated. Id.
In the instant case, plaintiff alleges, inter alia, the following:
17. That Plaintiff alleges on information and belief that the foregoing information mandated and [defendant's] policy and procedure and good nursing practice mandate the nursing staff employees of Defendant...to conduct a Fall Risk Screen Assessment and to implement a fall risk safety policy to protect [decedent] from falls and potential injuries therefrom.
18. That Plaintiff alleges on information and belief that notwithstanding the foregoing, the Defendant..., acting through its agents, servants and employees, particularly its nurses, failed on May 27, 2000 to properly conduct a Fall Risk Screen Assessment of [decedent] and implement a fall risk safety policy to protect [decedent] from potential harm from falls.
(emphasis added).[2] The FRSA states that its purpose is to "identify patients at risk for falls and implement steps by which a fall may be prevented." (emphases added). Furthermore, the FRSA states that its policy is that "[o]n admission to the nursing unit all patients will be assessed for risk of falling using the Admission Fall Risk Screen." (emphasis added). The steps in the FRSA procedure include, inter alia, Step 3, which states, "[t]he patient will be re-evaluated during daily assessment for being at risk of falling." (emphases added). The FRSA also states the nurse completing the screen is to make a "Nursing Diagnosis" of the patient's potential for injury from falls relating to one of eleven enumerated medical factors, such as "confused/disoriented," "impaired vision," and "neurological problems." (emphasis added). These facts tend to show that the acts of which plaintiff complains require "clinical judgment and intellectual skill." Sturgill, 186 N.C. App. at 630, 652 S.E.2d at 306. Therefore, they involve the rendering of professional services, and Rule 9(j) certification was required for plaintiff's action to proceed. Since plaintiff failed to obtain this certification, the trial court properly granted defendant's motion to dismiss.

III. CONCLUSION
Plaintiff's remaining assignments of error which are not argued in her brief are abandoned. N.C. R. App. P. 28(b)(6) (2009). The trial court properly granted defendant's motion to dismiss for failure to comply with Rule 9(j) certification.
Affirmed.
Judges WYNN and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] It is not disputed that defendant is a health care provider as defined in N.C. Gen. Stat. § 90-21.11.
[2] Plaintiff did not allege and plead facts establishing negligence under res ipsa loquitur. N.C. Gen. Stat. § 1A-1, Rule 9(j)(3) (2007).